IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-00369-NYW

QUALITY INNOVATIVE PRODUCTS, LLC,
PLAYMONSTER, LLC,

    Plaintiffs,

v.

BRAND 44, LLC,

    Defendant.

## ORDER DENYING MOTION TO DISMISS

Magistrate Judge Nina Y. Wang

This matter comes before the court on Defendant Brand 44, LLC's ("Defendant" or "Brand 44") Motion to Dismiss (or "Motion"). [#21]. This civil action was referred to the undersigned pursuant to the consent of all Parties. *See* [#17]; 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. Having reviewed and considered the Motion and associated briefing, the applicable case law, the entire docket, and the comments offered at the September 18, 2018 Motion Hearing, the court **DENIES** the Motion to Dismiss for the reasons stated herein.

## BACKGROUND

The court draws the following facts from the Amended Complaint and accepts that they are true for purposes of the instant Motion. Plaintiffs Quality Innovative Products, LLC and PlayMonster, LLC (collectively, "Plaintiffs") initiated this suit for alleged patent infringement against Defendant, asserting infringement of certain claims of three United States Patents: U.S. Patent Nos. 8,454,450 (the "'450 Patent"), 9,067,146 (the "'146 Patent"), and 9,415,316 (the "'316 Patent") (collectively, the "Patents-in-Suit"), each directed to a swing. [#1]. The Patents-in-Suit

are each entitled "Swing" and name Gregory Cordray as the inventor and Quality Innovative Products, LLC ("QIP") as the Assignee. *See* [#26-2; #26-5; #26-7]. PlayMonster, LLC ("PlayMonster") is the exclusive Licensee of the Patents-in-Suit. *See* [#1; #26 at ¶¶ 22, 37, 55]. According to Plaintiffs, Brand 44 manufactures, imports, uses, and/or sells the Slackers® Sky Saucer swing—a swing with a circular plastic seat suspended from a pivot with tethers to allow for swinging in several directions—which allegedly violates several claims of the Patents-in-Suit. *See* [#26 at 7–21; #26-1 through #26-9].

**The '450 Patent**: The '450 Patent issued on June 4, 2013. *See* [#26-2]. The patent explains that swings generally take two forms: (1) "conventional rectangular rigid swing seats . . . meant to move on an arc in a back-and-forth motion" or (2) "tire swings . . . that can twist and swing in any direction such as diagonal, circular, etc." [*Id.* at 1:14–21].[1] The inventions of the '450 Patent are directed to improving the "limited entertainment and enjoyment" these swings provide to "certain children and other users that are not capable of maintaining the proper position . . . and/or . . . controlling the motion of the swing in the manner intended and required." [*Id.* at 1:27–31]. In addition, the inventions of the '450 Patent aim to improve the "ease of manufacture, ease of installation, ease of use, durability, variety of modes of operation, safety, and other such attributes" of these two traditional swings. [*Id.* at 1:34–37].

The '450 Patent discloses technology pertaining to a concave central portion—shaped as a circular disk and supported by a web of radial ribs—that then attaches to several tethers along its peripheral edge which then connect to a support member. *See* [*id.* at 1:41–2:44]. This allows the swing body "to swing in any direction including back-and-forth, sideways, diagonal, circular, etc. and such that the swing body can twist." [*Id.* at 3:9–14].

---

[1] In citing to a Patent, the court cites to the document number generated by the court's CM/ECF filing system but the column and line numbers assigned by the Patent.

The patent includes 22 claims. Relevant here, independent Claim 22 discloses,

> 22. A swing comprising:
>
> a body including a concave central portion defining a recessed concave seat and a peripheral edge surrounding the concave central portion, wherein said peripheral edge of said body is circular such that said body defines a circular disk;
> said peripheral edge comprising:
> a plurality of tether openings, each of said tether openings adapted to receive an associated tether;
> a top wall that extends radially outward from said recessed concave seat;
> an outer circular wall connected to and projecting downwardly from an outer end of said top wall;
> a peripheral groove defined adjacent said top wall and said outer circular wall, wherein said plurality of tether openings each open through said top wall and into said peripheral groove; and,
> a tether system adapted to suspend the body from an associated support member, said tether system engaged with said tether openings and at least part of said tether system located in said peripheral groove.

[*Id.* at 7:3–23].

***The '146 Patent***: The '146 Patent is a continuation-in-part of the United States Patent Application No. 12/850,696 which matured in the '450 Patent, and issued on June 30, 2015. *See* [#26-5]. Much like the '450 Patent, the '146 Patent discloses a swing comprised of a plastic central portion, shaped as a circular disk with radial ribs for support and strength, which connects to several tethers suspended from a support member, *see* [#26-5 at 1:44–2:61], thereby allowing the swing body to "swing in any direction including back-and-forth, sideways, diagonal, circular, etc. and such that the swing body can twist[,]" *see* [*id.* at 3:46–51]. The inventions of the '146 Patent are again directed to improving the "entertainment and enjoyment" found lacking in traditional rectangular-seated swings and tire swings as well as improving the "ease of manufacture, ease of installation, ease of use, durability, variety of modes of operation, safety, and other such attributes" of such swings. *See* [*id.* at 1:28–40].

3

The '146 Patent includes 18 claims. Several are at issue here, including independent Claim 1 and 18, and dependent Claims 2, 4, 5, and 8. [#26-6]. In the Motion to Dismiss, Brand 44 utilizes independent Claim 1 as a representative claim.[2] [#21 at 14]. Independent Claim 1 discloses:

> 1. A swing comprising
>
> a body including a concave central portion defining a recessed seat and a peripheral edge surrounding the concave central portion;
> said peripheral edge comprising a plurality of tether openings;
> a tether system comprising a plurality of tether portions respectively engaged with said plurality of tether openings;
> wherein said peripheral edge comprises:
> a top wall that extends radially outward from an upper lip of said recessed seat;
> an outer wall connected to and projecting downwardly from an outer end of said top wall;
> a peripheral groove defined adjacent the top wall and the outer wall;
> wherein said tether openings are defined in said top wall and open through said top wall into said peripheral groove.

[*Id.* at 7:48–8:5].

***The '316 Patent***: The '316 Patent is a continuation of United States Patent Application 13/909,072 that matured in the '146 Patent, and issued on August 16, 2016. *See* [#26-7]. The claims of the '316 Patent are substantially similar to the '450 and '146 Patents, disclosing a swing body with "a concave central seat" that is connected to a tether system suspended from a support member, allowing the swing body to "swing in any direction". [*Id.* at 3:46–4:67]. And it is again intended to improve upon the "entertainment and enjoyment" found lacking in traditional

---

[2] At oral argument, counsel for Plaintiffs contended that the independent claims of the Patents-in-Suit could not be considered representative, because the asserted dependent claims of the Patents-in-Suit included additional structure that the court should consider on the second step of the analysis, should it reach that step. In reviewing both the papers and argument of Plaintiffs, this court finds no separate argument with respect to dependent claims. *See, e.g.*, [#28; #34]. While the Amended Complaint includes some statements regarding additional structure, *see* [#26 at ¶¶ 43–48], those arguments were not included in Plaintiffs' response and, therefore, were not addressed by Defendant in its Response to the Sur-Reply. [#35].

rectangular-seated swings and tire swings as well as to improve the "ease of manufacture, ease of installation, ease of use, durability, variety of modes of operation, safety, and other such attributes" of such traditional swings. *See* [*id.* at 1:29–40].

The '316 Patent includes 11 claims and Brand 44 utilizes independent Claim 1 as a representative claim. [#21 at 16–17]. Independent Claim 1 discloses:

> 1. A swing comprising:
>
> a one-piece molded polymeric body including a concave portion defining a recessed seat including an upper surface and a lower surface, said body further comprising a peripheral edge surrounding the concave portion, wherein said peripheral edge of said body is circular; said peripheral edge comprising a plurality of tether openings, each of said tether openings adapted to receive an associated tether;
> said lower surface of said seat comprising a plurality of seat support ribs extending therefrom, said seat support ribs extending radially outward from an inner end toward said circular peripheral edge, and said seat support ribs oriented normal to said lower surface of said seat.

[*Id.* at 7:43–56].

On April 16, 2018, Defendant moved to dismiss Plaintiffs' infringement claims, arguing that the asserted claims of the Patents-in-Suit are directed to patent-ineligible subject matter under 35 U.S.C. § 101. *See* [#21]. That is, the Patents-in-Suit concern swings, which are "nothing more than a millennia old application of a pendulum"—a natural phenomenon that cannot be patented. *See* [*id.* at 8]. On May 7, 2018, Plaintiffs filed a First Amended Complaint as a matter of right pursuant to Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure [#26], and responded to the Motion to Dismiss by arguing that it should be denied as moot, [#28]. Brand 44 then replied [#34], asserting that Plaintiffs' First Amended Complaint does not moot the pending Motion to Dismiss, and "does nothing to rebut Brand 44's argument that the Patents-in-Suit are directed to a natural phenomenon (a pendulum)." [#31 at 2]. After receiving leave to do so, Plaintiffs filed a Sur-Reply, substantively arguing that "neither a pendulum nor a swing is a natural phenomenon." [#34 at 2].

Then, without leave of court, Brand 44 filed yet another paper responding to Plaintiff's Sur-Reply requesting that the court dismiss the First Amended Complaint with prejudice. [#35 at 10].[3] The court entertained oral argument on the Motion to Dismiss on September 18, 2018 [#39]. The Motion is now ripe for disposition, and the court turns to each issue raised below, starting with mootness.

## LEGAL STANDARDS

### I. Rule 12(b)(6) of the Federal Rules of Civil Procedure

Under Rule 12(b)(6) a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). A plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claim(s) "across the line from conceivable to plausible."). The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an

---

[3] Neither the Federal Rules of Civil Procedure nor the Local Rules of Civil Practice for the District of Colorado provides for a response to a Sur-Reply without leave of court. No such leave has been obtained here. Nevertheless, given the fact that Plaintiffs did not provide any substantive response to Defendant's invalidity arguments until its Sur-Reply and to avoid further motions practice, this court will accept Defendant's response to the Sur-Reply [#35], so that it may proceed expeditiously to considering the substantive issues raised by the Motion to Dismiss.

entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007). In doing so, the court may consider materials beyond the complaint if the documents are central to the plaintiff's claims, referred to in the complaint, and the parties do not dispute their authenticity. *See Cty. of Santa Fe, N.M. v. Public Serv. Co. of N.M.*, 311 F.3d 1031, 1035 (10th Cir. 2002). The court may also take judicial notice of undisputed court documents and matters of public record. *See Tal v. Hogan*, 453 F.3d 1244, 1264 n. 24 (10th Cir. 2006).

Ordinarily, the filing of an amended complaint moots a motion to dismiss directed at the complaint that is supplanted and superseded. *Strich v. United States*, No. 09-CV-01913-REB-KLM, 2010 WL 14826, at *1 (D. Colo. Jan. 11, 2010) (citations omitted). Nevertheless, Brand 44 argues that its pending Motion to Dismiss applies equally to the First Amended Complaint. Upon evaluation of the Motion to Dismiss, this court agrees, and observes that Plaintiffs have been given the opportunity to substantially respond to the arguments raised by the First Amended Complaint through the filing of a Sur-Reply. Accordingly, I will evaluate Defendant's Motion to Dismiss as directed at Plaintiffs' First Amended Complaint.

## II.     Patent-Eligibility Under 35 U.S.C. § 101

Section 101 of the Patent Act, 35 U.S.C. § 101, specifies what types of subject matter are eligible for patent protection. The United States Supreme Court has long held that Section 101 "contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014) (internal quotation marks omitted). These exceptions represent "the basic tools of scientific and technological work." *Id.* (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013)). "Monopolization of those tools through the grant of a patent might tend

7

to impede innovation more than it would tend to promote it, thereby thwarting the primary object of the patent laws." *Id.* (citation and quotation omitted). Accordingly, courts must distinguish between patents that claim the "building blocks of human ingenuity and those that integrate the building blocks into something more." *Id.* (citation and quotation omitted). In *Alice*, the Supreme Court clarified that "[w]holly generic computer implementation is not generally the sort of 'additional feature' that provides any 'practical assurance that the process is more than a drafting effort designed to monopolize the abstract idea itself.'" *Id.* at 2350–51 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1297 (2012)).

"In *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 566 U.S. ___, [132 S. Ct. 1289] (2012), [the Supreme Court] set forth a framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 134 S. Ct. at 2354. The *Mayo/Alice* test is comprised of two consecutive steps. First, courts must "determine whether the claims at issue are directed to one of those patent-ineligible concepts." *Id.* If the answer is "yes," courts must then ask: "'[w]hat else is there in the claims before us?'" *Id.* In answering that question, courts must "consider the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application." *Id.* (internal quotation marks omitted). Put another way, the second step of the *Mayo/Alice* test directs this court to consider whether a claim at issue discloses an inventive concept, *i.e.*, an element or combination of elements that is sufficient to transform an abstract idea into a patent-eligible application of that idea. *See Vehicle Intelligence & Safety, LLC v. Mercedes-Benz USA, LLC*, 635 F. App'x 914, 919 (Fed. Cir. 2015).

Whether a patent satisfies the requirements of 35 U.S.C. § 101 is an issue of law. *See In re Bilski*, 545 F.3d 943, 950–51 (Fed. Cir. 2008) ("*Bilski I*"); *Research Corp. Techs., Inc. v. Microsoft Corp.*, 627 F.3d 859, 867 (Fed. Cir. 2010). The language of the patent claims governs the patent eligibility inquiry. *See Bilski I*, 545 F.3d at 950–51; *cf. Vehicle Intelligence & Safety LLC v. Mercedes-Benz USA, LLC*, 78 F. Supp. 3d 884 (N.D. Ill. 2015) (granting a renewed motion for judgment on the pleadings after claim construction).[4] The United States Court of Appeals for the Federal Circuit ("Federal Circuit") has "repeatedly recognized that in many cases, it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion." *FairWarning IP, LLC v. Iatric Sys.*, 839 F.3d 1089, 1097 (Fed. Cir. 2016) (citing *Genetic Techs.*, 818 F.3d at 1373–74). But in some circumstances courts should refrain from resolving patent-eligibility on a motion to dismiss under Rule 12 because of unresolved factual issues. *Cf. Potter Voice Techs., LLC v. Apple Inc.*, No. C 13-1710 CW, 2015 WL 5672598, at *5 (N.D. Cal. June 11, 2015) (declining to grant summary judgment on claims that "colorably involve[d] an inventive concept"). Indeed, the court heeds the Federal Circuit's caution that dismissal for lack of patentable subject matter at the pleading stage should be "the exception, not the rule." *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1339 (Fed. Cir. 2013) (explaining that dismissal under Rule 12(b)(6) for lack of patentable subject matter is warranted when "the *only* plausible reading of the patent must be that there is clear and convincing evidence of ineligibility." (emphasis in original)), *vacated on other grounds by WildTangent, Inc. v. Ultramercial, LLC*, 134 S. Ct. 2870 (2014)).

---

[4] A claim construction hearing is currently set for December 19, 2018. *See* [#23].

**ANALYSIS**

The first step in the *Alice/Mayo* test requires the court to determine whether "the claims at issue are directed to a patent-ineligible concept." *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1347 (Fed. Cir. 2016) (internal quotation marks omitted). The "directed to inquiry . . . cannot simply ask whether the claims *involve* a patent-ineligible concept, because essentially every routinely patent-eligible claim involving physical products and actions *involves* a law of nature and/or natural phenomenon". *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016). Thus, the inquiry is a meaningful one that requires the court to "look[] at the focus of the claims, their character as a whole," *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) (internal quotation marks omitted), as a finding that the claims are <u>not</u> directed to a patent-ineligible concept ends the § 101 analysis, *see Enfish*, 822 F.3d at 1339 (citing *Alice*, 134 S. Ct. at 2355).

Brand 44 stresses that the claims at issue are all directed toward "the natural phenomenon of a pendulum," which "results from the force of gravity on a mass suspended from a pivot." [#21 at 8]; *see also* [#31 at 2, 4–5; #35 at 2–7]. It avers that regardless of whether the claims individually cover articles of manufacture, the character of the claims as a whole demonstrate that each involves the natural phenomenon of a pendulum and are therefore ineligible patent subject matter. *See* [#31 at 4–5; #35 at 4–7]. Plaintiffs counter that "[a]ll of the claims of the Patents-in-Suit are articles of manufacture clearly within the explicitly recited patent-eligible subject matter of 35 U.S.C. § 101 . . . . Each of the claims of the Patents-in-Suit recite an improved swing comprising and claimed as a combination of mechanical parts." [#34 at 1]; *see also* [*id.* at 5]. Plaintiffs also argues that although the Patents-in-Suit may involve the natural phenomenon of a pendulum, the claims at issue do not recite this natural phenomenon, analogizing the Patents-in-Suit to the "teeter-totter"

example found in the Manual of Patent Examining Procedure ("MPEP") § 2106.4. [*Id.*]. For the following reasons, I respectfully agree with Plaintiffs and conclude that the claims at issue are not directed to the natural phenomenon of a pendulum.

It is axiomatic that patents, even those concerning articles of manufacture, may be invalid if directed to patent-ineligible subject matter, *i.e.*, a natural phenomenon. *See generally Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1375 (Fed. Cir. 2015). The Supreme Court "has read the term manufacture in § 101 to mean the production of articles for use from raw or prepared materials by giving to these materials new forms, qualities, properties, or combinations, whether by hand-labor or machinery." *Samsung Elecs. Co., Ltd. v. Apple Inc.*, 137 S. Ct. 429, 435 (2016) (ellipsis and internal quotation marks omitted). As mentioned, Plaintiffs assert that while the Patents-in-Suit may involve the natural phenomenon of a pendulum, the claims at issue are <u>not</u> directed to the natural phenomenon itself but, rather, are articles of manufacture "in the form of an improved swing." [#34 at 5]. Indeed, the language of the claims at issue, which governs the patent eligibility inquiry, supports Plaintiffs' contention. *See Bilski I*, 545 F.3d at 950–51.

For instance, independent Claim 22 of the '450 Patent encompasses a swing comprising of a central concaved seat, shaped as a circular disk, with a peripheral edge that allows for the connection of several tethers suspended from a support member. *See* [#26-2 at 7:3–23]. The same is true of independent Claims 1 and 18 of the '146 Patent, *see* [#26-5 at 7:48–8:5, 8:42–60], as well as independent Claims 1, 5, and 10 of the '316 Patent with the additional component being that the center seat be a one-piece molded polymeric body, *see* [#26-7 at 7:42–56, 8:8–27, 8:44–58]. The dependent Claims are similarly not directed to a natural phenomenon. Instead each explains additional components of the central concave seat, *e.g.*, a drain opening, a one-piece molded polymeric construction, a circular shape, *see* [#26-5 at 8:6–20; #26-7 at 8:28–43], as well

11

as four tether openings spaced at 90 degree intervals around the circular seat, a groove for said tether openings, a tether system suspended from a support body, and various radial support ribs, *see* [#26-7 at 8:28–43, 8:59–63].  Certainly, the Patents-in-Suit *involve* a natural phenomenon, but the claims at issue are <u>not</u> *directed* to that natural phenomenon.  Rather, the claims at issue are directed to articles of manufacture used to improve upon the use of traditional swings.  *See Enfish*, 822 F.3d at 1338 (holding that the claims at issue were not directed to patent-ineligible concepts and distinguishing the claims in *Alice* and *Versata Dev. Grp. v. SAP Am., Inc.*, 793 F.3d 1306 (Fed. Cir. 2015), because "the claims here are directed to an improvement in the functioning of a computer.").

This conclusion comports with the "teeter-totter" example drawn by MPEP § 2106.04. Section 2106.4 explains that step one of the *Alice/Mayo* test seeks to distinguish patents that *involve* a natural phenomenon from those that *recite* (*i.e.*, set forth or describe) a natural phenomenon—the latter being *directed* to a patent-ineligible subject matter.  *See 2106.04 Eligibility Step 2: Whether a Claim is Directed to a Judicial Exception (R-08.2017)*, MPEP § 2106.04 [*hereinafter* MPEP § 2106.04].  By way of example, § 2106.04 provides:

> [A] claim that recites a judicial exception is "A machine comprising elements that operate in accordance with F=ma." This claim recites the principle that force equals mass times acceleration (F=ma) and is therefore directed to a law of nature exception. Because F=ma represents a mathematical formula, the claim could alternatively be considered as directed to an abstract idea. Because this claim is directed to a judicial exception [], it requires further analysis [under step two of the *Alice/Mayo* test]. An example of a claim that merely *involves, or is based on*, an exception is a claim to "A teeter-totter comprising an elongated member pivotably attached to a base member, having seats and handles attached at opposing sides of the elongated member." This claim is based on the concept of a lever pivoting on a fulcrum, which involves the natural principles of mechanical advantage and the law of the lever. However, this claim does not recite these natural principles and therefore is not directed to a judicial exception []. Thus, the claim is eligible without further analysis.

12

*Id.* (emphasis added). A similar situation exists here: the Patents-in-Suit involve the natural phenomenon of a pendulum, but the claims at issue do not set forth or describe a pendulum; they are instead directed to articles of manufacture that aim to improve traditional swings. *See Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042, 1047–48 (Fed. Cir. 2016) (holding at step one of the *Alice/Mayo* test that the claims at issue were not directed to a law of nature, because the claims were "directed to a new and useful laboratory technique for preserving hepatocytes. . . . In recent cases, we found claims 'directed to' a patent-ineligible concept when they amounted to nothing more than observing or identifying the ineligible concept itself."). Unlike United States Patent No. 6,368,227 that Brand 44 introduced at oral argument [#39-1], the claims at issue from the '450, '146, and '316 Patents are not directed at a method of swinging on a swing. Rather, the claims are directed at a mechanical device used to facilitate swinging.

Brand 44 takes issue with any reliance this court may place on the MPEP. *See* [#31 at 4–5; #35 at 2, 5–6]. While Defendant is correct that the MPEP does not carry the force of law, "it is entitled to judicial notice as an official interpretation of statutes or regulations as long as it is not in conflict therewith." *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1180 n.10 (Fed. Cir. 1995); *accord McKesson Info. Sols., Inc. v. Bridge Med., Inc.*, 487 F.3d 897, 923 n.2 (Fed. Cir. 2007) ("[A]lthough [the MPEP] does not have the force of law, [it] is well known to those registered to practice in the PTO and reflects the presumptions under which the PTO operates."). And despite Brand 44's challenges to the MPEP, the USPTO, and the Patent Examiner, the court is not persuaded that the "teeter-totter" example is "wrong," or that the MPEP is in any way inconsistent with established precedent or even conflates the two-step process for determining patentable subject matter.

Indeed, at oral argument, counsel for Defendant seemed to dismiss any concern regarding conflating the two distinct steps of the *Mayo/Alice* analysis. This court inquired as to whether every invention would then be subject to a *Mayo/Alice* analysis if the court were to accept Defendant's argument that the claims in the Patents-in-Suit were directed at the natural phenomenon of a pendulum, rather than at a mechanical device of a swing, giving an example of the boat that relies on the natural phenomenon of flotation. In response, counsel for Defendant suggested that even if a boat were to be put through such a two-step analysis, a boat would have sufficient inventive concept at step two and that § 101 applies to all patent claims even throughout the prosecution before the USPTO. But such a response ignores the fact that the United States Supreme Court defined a framework for considering § 101 challenges with two distinct steps. The court "must first determine whether the claims at issue are directed to a patent-ineligible concept." *Alice*, 134 S.Ct at 2355.

Based on the foregoing reasons, I conclude that the claims of the Patents-in-Suit at issue are not directed to patent-ineligible subject matter under 35 U.S.C. § 101. Accordingly, there is no need for the court to consider whether the claims at issue amount to significantly more than the natural phenomenon itself. *See Enfish*, 82 F.3d at 1339 ("Because the claims are not directed to an abstract idea under step one of the *Alice* analysis, we do not need to proceed to step two of that analysis." (citing *Alice*, 134 S. Ct. at 2355)). In doing so, this court does not pass on Defendant's arguments regarding whether the claims at issue sufficiently disclose an "inventive concept" and simply notes that the issues of novelty and non-obviousness pursuant to 35 U.S.C. §§ 102 and 103 are distinct from even the second step of the analysis of patentability under 35 U.S.C. § 101. *Cf. Domo, Inc. v. Grow, Inc.*, No. 2:17-cv-812, 2018 WL 2172937, at *6 (D. Utah May 10, 2018).

## CONCLUSION

For the reasons stated herein, the court hereby **ORDERS** that:

(1)     Defendant's Motion to Dismiss [#21] is **DENIED**.

DATED:  October 4, 2018                              BY THE COURT:

                                                                     _____
                                                                     Nina Y. Wang
                                                                     United States Magistrate Judge